## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**ULTIMATE COLLISION REPAIR, INC.**                                              **Plaintiff**

**v.**

**STATE FARM INDEMNITY COMPANY, et al.,**                             **Defendants**

**Case No.: 6:14-cv- 6013 (New Jersey)
MDL NO. 2557**

---

### PLAINTIFF'S OMNIBUS RESPONSE TO DEFENDANTS' MOTION TO DISMISS

---

COMES NOW, Ultimate Collision Repair, Inc., Plaintiff in the above-caption cause, and submits this, its Omnibus Response to the Motions to Dismiss filed in this action, Docket Nos. 38 and 39, and states to the Court the following:

Defendants Motions to Dismiss fail to provide legitimate grounds for dismissal of this action. Defendants improperly conflate state law causes of action, fail to identify independent elements of these claims and fail to support their arguments with applicable authority. With respect to the claim of tortious interference with business prospects, moving Defendants in Docket No. 37 wholly misrepresent applicable authority and pleading requirements. With respect to the federal antitrust claims and New Jersey state antitrust claim, the Moving Defendants in Docket No. 37 make no argument whatsoever.

With respect to individualized pleading allegations, the GEICO Defendants assert "group pleading" is improper but do so without reference to the history of the companion case upon which it heavily relies and without advising the Court of conflicting authority. Further GEICO misrepresents the pleading requirements for antitrust claims. For the reasons set forth below, Ultimate Collision Repair respectfully submits these motions must be denied.

The defendants included in the filing of Docket No. 39 are referred to hereafter as "Moving Defendants." The GEICO Defendants included in the filing of Docket No. 38 are referred to hereafter as "GEICO Defendants" or "GEICO."

### I.  THE STANDARD OF REVIEW FOR 12(b)(6) MOTION TO DISMISS

The threshold of sufficiency a complaint must meet to survive a motion to dismiss is exceedingly low, and Rule 12(b)(6) dismissals are particularly disfavored in fact-intensive antitrust cases. *Spanish Broad. Sys. of Fla. v. Clear Channel Communs.*, 376 F.3d 1065, 1070 (11th Cir. 2004).

It is the purpose of a Rule 12(b)(6) motion to test the formal sufficiency of the statement for relief. *Broyde v. Gotham Tower*, 13 F.3d 994, 996 (6th Cir. 1994). Factual allegations made in the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Noble Shaheed Allah El v. Avesta Homes*, LLC, 520 Fed. Appx. 806, 808 (11th Cir. Fla. 2013).

The Supreme Court has firmly established the factual pleading requirements necessary to satisfy F.R.C.P. 8: "Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal punctuation retained).

While more than a bare allegation of wrongdoing is required, a complaint does not require detailed, specific pleading of facts, as Rule 8 does not require such. *Id*. at 555. See also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (emphasis added).

## II.  UNJUST ENRICHMENT AND QUANTUM MERUIT

The moving Defendants improperly conflate the unjust enrichment and quantum meruit causes of action, and inaccurately assert these are analyzed identically under New Jersey law as under Florida law. This is not incorrect and leaves the Court in the position of reviewing a motion which does not actually make coherent arguments regarding either equitable claim.

These causes of action, though similar, are nevertheless also quite distinct, including having different essential elements. While quantum meruit arises out of the expectation of the parties, unjust enrichment is based upon society's interest in preventing the injustice of a person's retaining a benefit for which no payment has been made to the provider. *Provident Bank v. Antonucci,* 2014 U.S. Dist. LEXIS 172154 (D.N.J. Dec. 12, 2014).

Rather than adopt moving Defendants unified approach to two distinct legal doctrines and bodies of law, Plaintiff properly separates the causes of action for individual review.

A.     Unjust Enrichment

Unjust enrichment is the equitable doctrine holding where a case shows it is the duty of the defendant to pay, the law imparts to him a promise to fulfill that obligation. The duty rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another, and on the principle of whatsoever it is certain a man ought to do, the law supposes him to have promised to do. *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 108-109 (App.Div. 1966).

Under New Jersey law, "the constructive or quasi-contract is the formula by which enforcement is had of a public duty raised to prevent unjust enrichment or unconscionable benefit or advantage." *Suburban Transfer Service, Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226 (3d Cir. 1983). See also *Yingst v. Novartis* AG, 2014 U.S. Dist. LEXIS 164749 (D.N.J. Nov. 24, 2014).

Importantly, recovery in quasi-contract is based upon an underlying duty and the unjust enrichment of one party <u>when another party satisfies that underlying duty</u>. *Mullins v. First Night Wayne*, 326 N.J. Super. 93, 96 (App.Div. 1999)(emphasis added).

No Defendant has alleged it has no duty to pay the costs of repairs performed by Plaintiff upon the vehicles of their respective insureds and claimants.  Nor could the Defendants reasonably or believably so assert.  Thus, the first half of the unjust enrichment doctrine is conceded.

Where a plaintiff fulfills the duty owed by a defendant to a third party without compensation by the defendant, the defendant has been unjustly enriched at the plaintiff's expense.  *St. Barnabas Medical Ctr. v. County of Essex*, 111 N.J. 67, 79 (N.J. 1988)(emphasis added).

### i.    New Jersey state law elements of unjust enrichment claim

In New Jersey, to establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust, that plaintiff expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant. *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (N.J. 1994).

### ii.    Moving Defendants erroneously assert inaccurate definitions of unjust enrichment elements

Moving Defendants erroneously assert Plaintiff's claim for unjust enrichment must be dismissed because New Jersey law requires a plaintiff confer a direct benefit upon the defendant before the claim is cognizable and no such benefit has been conferred directly upon them.

This statement is, at best, an incomplete recitation of applicable law which fails to properly inform the Court of New Jersey law regarding what constitutes a benefit and what constitutes "direct."  For purposes of unjust enrichment, neither "benefit" nor "direct" are as strictly construed as Defendants assert.

### iii.    New Jersey law specifically recognizes services rendered to an insured as conferring a benefit to the insurer for purposes of unjust enrichment

Particular to this case, **New Jersey state law long ago specifically recognized performance of services rendered to an insured or claimant is a benefit to the insurer**. In the context of a medical facility rendering services to an insured of defendant's, New Jersey's appellate court held, "In such case, the Hospital "dutifully intervened" in the affairs of the Insurance Company, and conferred a benefit upon it, for which they are entitled to remuneration to the extent of the reasonable value thereof." *Rabinowitz v. Mass. Bounding & Ins. Co.*, 119 N.J.L. 552, 557 (E. & A. 1938)(emphasis added).

This holding is consistent with the broad definition of "benefit" consistently recognized by New Jersey courts. "Benefit" has been found to include:

- Fulfilling the defendant's duty owed to a third party. *St. Barnabas,* 111 N.J at 79 ("Because Saint Barnabas fulfilled the County's duty to provide or obtain treatment for Williams during the tenure of his sentence, the County has been enriched at plaintiff's expense. To the extent the County benefitted from plaintiff's discharge of its duty, recovery may be had based on quasi-contract, or a contract implied-in-law.");

-  Valuable information prepared by an outside party to which the defendant would not have had access but for the plaintiff. *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 144 N.J. 564, 576 (N.J. 1996)("That the project did not turn out ultimately to serve the needs of the residents of West Milford does not detract from the fact that they received a benefit from the planning studies. Although the Township determined that it was better to go it alone, the environmental and engineering studies undoubtedly provided West Milford with valuable information that enabled it to reach that conclusion.");

- Proprietary information and the profits realized from use of proprietary information. *Cameco, Inc., v. Gedicke*, 690 A.2d 1051, 1059 (N.J. Sup. Ct., App. Div., 1997)("At the time that Cameco exposed Gedicke to  its shipping information, Cameco did not expect any remuneration for that "benefit." Moreover, it is not clear that it would be unjust for Gedicke to retain the benefits (profits of Newton) of the benefit (shipping information) he "received" from Cameco, at least as to his customers who were not competitors of Cameco.");

- Payment of a debt or judgment owed by another. *Dickstein v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 685 A.2d 943, 950 (N. J. Sup. Ct., App. Div., 1996)("Plaintiffs here would be unjustly enriched by the motion judge's ruling. They received a benefit when the tax

judgment was satisfied. To make defendants also pay for plaintiffs' failure to contest the tax assessment would be unjust and in effect result in a windfall to plaintiffs. They would not only receive the benefit of the judgment against them having been satisfied, but also receive payment from the defendants who had satisfied that debt.").

Thus, "benefit" incorporates not merely the direct transaction of goods and services from A to B, as moving Defendants would have this Court believe, but incorporates intangibles including execution of duties owed to a third party, as in the present case, and as has been directly recognized by New Jersey law.

On this latter point, New Jersey's law is consistent with numerous other jurisdictions as the *Restatement of Restitution § 1* holds a person confers a benefit upon another if he, among other things, performs services beneficial to or at the request of the other, <u>satisfies a debt or a duty of the other</u>, or in any way adds to the other's security or advantage. He confers a benefit not only where he adds to the property of another, but also where he saves the other from expense or loss. <u>The word "benefit," therefore, denotes any form of advantage.</u>[1]

New Jersey has accepted and applied the *Restatement of Restitution § 1* with respect to unjust enrichment for decades. See, e.g., *Jersey Shore Sav. & Loan Ass'n v. Edelstein*, 219 N.J. Super. 664, 669 (Ch.Div. 1987), *Winslow, Cohu & Stetson, Inc. v. Skowronek*, 136 N.J. Super. 97, 104 (Law Div. 1975), *Gillette Co. v. Two Guys from Harrison, Inc.*, 36 N.J. 342, 352 (N.J. 1962), *Brick v. Vannell*, 55 N.J. Super. 583, 595 (App.Div. 1959).

Plaintiffs do recognize a New Jersey district court has apparently held to the contrary, *Broad Street Surgical Ctr., LLC v. UnitedHealth Group, Inc.*, 2012 U.S. Dist. LEXIS 30466 (D.N.J. Mar.

---

[1] This is a principle upon which at least one of the moving Defendants has specifically relied and asserted as valid in prior New Jersey litigation. *Allstate Ins. Co. v. Scott Greenberg, D.C.*, 2005 N.J. Super. Unpub. LEXIS 827 (Law Div. May 20, 2005) .

6, 2012).  However, moving Defendants' reliance upon this case is in error as the New Jersey state case upon which it purportedly relies, *Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn*, was misapplied by the district court.   In *Alpert*, plaintiff law firm sued defendant former clients for nonpayment of fees and expenses as set out in the firm's master retainer agreement.  The trial court found for the plaintiff firm and awarded compensatory damages, undefined sanctions and awarded attorney's fees and costs for the collection litigation.

The appellate course reversed the trial court. The appellate court noted the compensatory damages award was not sustainable and the sanctions and costs and expenses award could not be recovered under equitable principles as the suit conferred no benefit upon the defendants.

In other words, the New Jersey court affirmed that being sued confers no benefit upon a defendant, via dicta in a footnote.[2]  No other finding was made in this case and the case does not support either the interpretation by the district court nor Defendants' arguments in the present matter.

The additional case relied upon by the district court in *Broad Street* is equally inapplicable. *Travelers Indem. Co. of Conn. v. Losco Group, Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001) was a New York case, applying New York law to New York state law causes of action.  New York law has no bearing on New Jersey law and certainly cannot be used to supplant New Jersey law.

As New Jersey law specifically recognizes the services and materials furnished by Plaintiffs

---

[2]The complete footnote reads: "We have earlier in this opinion held that to the extent the award was made pursuant to A.G.'s Master Retainer, it is unenforceable. We note further that the award is also not sustainable as a quantum meruit recovery because the fees and expenses sought did not confer a benefit on defendants."

to claimants and insureds as a benefit to the Defendant insurers, the argument that no benefit has been conferred is without legal merit.

### iv.  Moving Defendants' argument that no direct benefit was conferred misstates applicable New Jersey state law

In addition to arguing they were not benefitted by Plaintiff's services, the moving Defendants argue they were not <u>directly</u> benefitted and thus the claim for unjust enrichment cannot lie.  This argument relies upon an incomplete representation of New Jersey law.

The New Jersey courts have made clear that "direct benefit" analysis applies to only a single element of a claim for unjust enrichment, whether or not the performing plaintiff could reasonably expect remuneration <u>from the defendant sought to be held liable</u>.  See, e.g., *Callano*, 91 N.J. Super. at 109 ("However, a common thread runs throughout its application where liability has been successfully asserted, namely, that the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred.")

In assessing that factor, New Jersey courts have uniformly held reasonable a plaintiff's expectation of remuneration from the defendant where there is a <u>direction relationship</u> between the parties or a mistake by the party conferring the benefit.  *Id.*  See also, *Union Trust Co. v. Wakefern Food Corp.*, 1989 U.S. Dist. LEXIS 11754 (D.N.J. Sept. 8, 1989) ("Finally, unjust enrichment requires a relationship or course of dealings between parties which, if left undisturbed by the intervention of the law, permits one party to obtain "unjust enrichment or unconscionable advantage" over the other."), and *Fasching v. Kallinger*, 211 N.J. Super. 26, 36 (App.Div. 1986)("We further noted that these cases involved either a direct relationship between the parties or a mistake on the

-8-

part of the person conferring the benefit.").

There was unquestionably a direct relationship between Plaintiff and the moving Defendants, as well as a course of dealing.  The Defendants communicated regularly and routinely directly with the Plaintiff regarding repairs, often required Plaintiff to withhold services until their employee or hired representative examined the vehicles, asserted they had authority to control the manner of repairs and parts used in the repair process through explicit direction to the Plaintiff and retained absolute control over compensation, including making payment directly to the Plaintiff for its services.  (See Complaint, ¶¶ 64-65, 68, 70-71, 73, 81, 85.)

Activities far less direct and numerous have previously been held to constitute a direct relationship between plaintiff and defendant.  *Amgro, Inc. v. Lincoln Gen. Ins. Co.*, 361 Fed. Appx. 338, 347-348 (3d Cir. N.J. 2010)("Given these facts, the relationship between Lincoln General and MacGregor was sufficient enough for the unjust enrichment claim against MacGregor to survive summary judgment. Unlike the plaintiff in *Callano*, Lincoln General repeatedly communicated with MacGregor and both parties recognized that they were in some form of business relationship.").

Defendants' own actions have created the direct relationship between themselves and the Plaintiff.  Defendants' own actions have created the reasonable expectation of remuneration from them.  Imposing the economic power they hold, Defendants' creation of a system whereby they actively and  officiously interpose themselves in the repair process has unjustly enriched them. Defendants cannot now disclaim the relationship.

These actions, as well as the many others set forth in the Complaint, have directly and unjustly profited the Defendants and inflicted substantial pecuniary harm upon the Plaintiff.

### v. The Complaint more than sufficiently alleges facts to sustain a claim of unjust enrichment

The only arguments asserted by moving Defendants are predicated upon purported legal deficiencies, i.e., the law of New Jersey does not permit the Plaintiff to assert a claim for unjust enrichment.  Moving Defendants do not allege any factual deficiency.

As such, Plaintiff's only duty in responding to the motions are to properly inform the Court of New Jersey state law upon this claim and thereby rebut moving Defendants' arguments.  Having done so, arguably Plaintiff's obligation is satisfied and Plaintiff need not address the factual allegations of the Complaint at all.

However, in the interests of completeness, Plaintiff sets out the factual allegations of the Complaint relating to the elements of this claim.

The allegations of the Complaint more than satisfy the factual elements for a claim of unjust enrichment under New Jersey law.  Examples include, but are not limited to, the following:

(1)     defendant received a benefit;
        • Plaintiff rendered services and expended materials in repairing vehicles of the Defendants' insureds and claimants (Complaint, ¶¶ 30, 37)
(2)     retention of that benefit without payment would be unjust
        • Defendants have a duty to pay the costs of repairs to the vehicles of their respective insureds and claimants but refuse to do so or refuse to do so fully leaving the Plaintiff to either perform inadequate repairs for which it can be held liable or perform the repairs fully at a loss, imposing labor rate compensation ceilings that do not correlate to the rate the Plaintiff actually charges, requiring use of substandard parts or paying only the cost of substandard parts whether or not they are actually used, refusing to compensate for procedures required to return the vehicle to pre-accident condition, placing ceilings on compensation for paint and materials, all of which cause substantial, unjustified harm to the Plaintiff (Complaint, ¶¶ 31, 40-46, 57-59, 65, 68, 73)
(3)      that plaintiff expected remuneration from the defendant at the time it performed or conferred a benefit on defendant
        • Defendants' actions created a direct relationship between themselves and Plaintiff such that Plaintiff reasonably expected payment from Defendants for services rendered (Complaint, ¶¶ 30, 37,59, 69-71, 94 and 95); and
(4)     the failure of remuneration enriched defendant (Complaint, ¶¶ 31, 82, 95).

As New Jersey law specifically recognizes Plaintiff's services to moving Defendants' insureds and claimants as a benefit, and New Jersey law has recognized the repeated and direct involvement and communication between the Defendants and Plaintiff as a direct relationship, the motion to dismiss with respect to this claim is without legal support.  With respect to the factual allegations underlying the elements of the claim, there are more than sufficient factual inclusions to deem the motion to dismiss insupportable.  Plaintiff respectfully submits the motion as to this cause of action must be denied.

B.     Quantum Meruit

As noted above, the moving Defendants improperly conflate quantum meruit with unjust enrichment.  As such, Plaintiff can only assume the same two assertions apply to both, namely, that the claim must be dismissed because Plaintiff conferred no benefit upon the moving Defendants and that no direct benefit was conferred upon them.  As with the claim of unjust enrichment, moving Defendants arguments are based upon incomplete or inaccurate recitations of New Jersey law.

Quantum meruit is a form of quasi-contract, which means "'as much as he deserves[.]'" *Kopin v. Orange Products, Inc.*, 297 N.J. Super. 353, 367 (App.Div. 1997).  Quantum meruit enables the performing party to recover the reasonable value of services he/she rendered.  *Id.*  Courts will apply the equitable remedy of quantum meruit when one party has conferred a benefit on another, and the circumstances are such that to deny recovery would be unjust. *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 437 (N.J. 1992).

i.     Elements of Quantum Meruit claim under New Jersey law

There are four elements a plaintiff must satisfy to recover pursuant to this doctrine: 1) that the services were performed in good faith, 2) the services were accepted by the person for whom they

were rendered, 3) plaintiff reasonably expected compensation for performing the services, and 4) the value of the services is reasonable.  *Starkey v. Estate of Nicolaysen*, 172 N.J. 60, 68 (N.J. 2002).

The only arguments forwarded by the moving Defendants are the purported lack of benefit conferred upon them and the purported lack of benefit conferred directly upon them.  Conferring a benefit, whether direct or indirect, is not an element of a claim for quantum meruit.  As such, the moving Defendants have forwarded no argument in furtherance of their motion to dismiss this claim.

However, as the definition of quantum meruit adopted by New Jersey does reference a benefit, though the actual elements of the cause do not, Plaintiff responds further out of an abundance of caution.

ii.     Plaintiff has conferred a benefit upon the Defendants as defined by New Jersey law

As discussed at length above, New Jersey law includes a diverse universe of what constitutes a "benefit" for purposes of equitable, quasi-contractual causes of action.  Directly on point is New Jersey's long-standing recognition that a plaintiff who performs services enabling the defendant insurer to fulfill its contractual obligations confers a benefit to the insurer.

This is in harmony with New Jersey's equally long-standing rule that a plaintiff whose actions enable a defendant to fulfill contractual obligations to a third party has rendered a benefit to that defendant.

As such, Defendants' argument that no benefit has been conferred upon them conflicts with affirmative New Jersey law and is without legal basis.

iii.    Moving Defendants' argument that no direct benefit was conferred misstates applicable New Jersey state law

As discussed at length above, Defendants' arguments regarding "direct benefit" conflicts with

-12-

New Jersey law and is without support.  In quasi-contractual claims, the Court looks to the existence of a <u>direct relationship</u> between the parties, not the direct provision of goods or services as moving Defendants assert.

Moving Defendants have continually and over the course of years created the direct relationship between themselves and the Plaintiff by, among other things, repeatedly and directly communicating with Plaintiff about individual repairs, compelling Plaintiff to refrain from performing repairs unless and until they agree and assent, attempting to direct the course of repairs, including the procedures to be completed, the parts to be used and the finishing processes to be completed.

Having created the direct relationship necessary under New Jersey law, the Defendants may not now be heard to disavow it solely for litigation advantage.  Defendants' argument conflicts with affirmative New Jersey law and is without legal merit.

<u>iv.      The Complaint contains sufficient factual matter to sustain this cause of action</u>

Moving Defendants do not make any specific argument regarding any of the elements of this cause of action.  However, a review of the Complaint establishes the factual matter assert meets the pleadings requirements for this cause of action.

1) that the services were performed in good faith
- Plaintiff is in the business of professional repair to vehicles sustaining collision-related damage.  Plaintiff has attempted to make all repairs necessary to complete both a safe repair of the vehicles and to return the vehicles to pre-accident condition (Complaint, ¶¶ 28, 30, 65, 68)

2) the services were accepted by the person for whom they were rendered;
- Plaintiffs made repairs under the supervision and purported control of the Defendants and Defendant accepted the same via partial or incomplete payment (Complaint, ¶¶30, 37,59, 69-71, 94 and 95)

   3) plaintiff reasonably expected compensation for performing the services;

•     Plaintiff is in the business of professional repair to vehicles sustaining collision-related damage, Plaintiff always expected payment for these professional services and such expectation was reasonable (complaint, ¶¶ 28, 30, 94-95)

   4) the value of the services is reasonable.

•     Plaintiff's charges have never been deemed unreasonable.  Payment was limited not to the reasonableness of charges but due to Defendants' unified and illegal suppression of labor rates, refusal to pay fully for parts and labor, materials, refusal to compensate for processes and procedures required to return the vehicle to its safe, pre-accident condition and other actions by the Defendants in contravention of state and federal law (Complaint, ¶¶ 32-35, 39-46, 57-63, 64-68, 70-73,78-81).

There are more than sufficient factual inclusions to deem the motion to dismiss insupportable.

Plaintiff respectfully submits the motion as to this cause of action must be denied.

       v.     Moving Defendants' argument that Plaintiff's expectation of higher payment was unreasonable is without legal or logical support

The final argument within this section is both illogical and contrary to law.  In effect, Defendants argue that because they have so successfully underpaid the Plaintiff for a long period of time, Plaintiff's expectation of full remuneration for services rendered is not reasonable.

Legally, moving Defendants have presented the issue backwards: it is irrelevant whether or not Defendants have successfully avoided their legal obligations in the past by continually underpaying Plaintiff.  Under quantum meruit, the elements look to reasonable value of Plaintiff's services, which is a fact in controversy not susceptible to dismissal analysis as the Court has no facts regarding the value of Plaintiff's services before it.  Whether Defendants believe their payments were reasonable is irrelevant as the law does not test Defendants' beliefs, but the actual value of the services.

With respect to unjust enrichment, the reasonableness element tests the Plaintiff's assertion that Defendants are liable for the cost of repairs, as opposed to some other party or entity.  It does not assess

whether the amount paid was objectively reasonable, nor is it concerned with Defendants' beliefs on that subject.

Whether or not it was reasonable for Plaintiff to expect payment for services from the named Defendants (as opposed to another person or entity) is not in question.  The Defendants have partially paid for those services and Defendants have admitted they are obliged to pay for the repairs.

Both logically and as a matter of public policy and welfare, the insupportability of Defendants' argument is apparent on its face.  It is, in essence, akin to arguing a robbery victim has no right to seek legal redress for being robbed on Tuesday because he was successfully robbed on Monday without consequences to the perpetrator.  In other words, moving Defendants are attempting to place the responsibility for their successful malfeasance upon the Plaintiff.

If Defendants have an affirmative defense which captures the spirit of this particular argument, they are welcome to so assert by way of an answer.  It is not, however, a proper consideration upon motion for dismissal.

Defendant GEICO's individual motion duplicates the allegations of the Moving Defendants and therefore will not be duplicated in response, with one exception.  GEICO alleges that in the alternative to the forgoing arguments, Plaintiff's claim must nonetheless be dismissed as an express contract covers the subject matter of Plaintiff's claim.  GEICO purports that Plaintiff has express contracts with its customers.

This argument has no foundation in the facts of the Complaint.  The Plaintiff has not alleged the existence of a contract at all.  GEICO asserts that such exists.  However, that is an affirmative defense the Defendants must plead by way of an answer, which they have not filed, and for which they bear the burden of proof.  Simply stating there is a contract in a motion to dismiss is insufficient and conclusory.

Any argument regarding a purported contract must be excluded from this Court's consideration.

As the Plaintiffs have not asserted the existence of a contract in the Complaint and it is the factual allegations of the Complaint which are tested by a motion to dismiss, the Defendants' argument is without merit.

### III.  QUASI-ESTOPPEL

A.    Defendants' arguments that quasi-estoppel is not recognized in New Jersey law are inaccurate

Quasi-estoppel is the equitable doctrine which prohibits a party from taking a position inconsistent with prior conduct, if this would injure another, regardless of whether that person has actually relied thereon.  *Kazin v. Kazin*, 81 N.J. 85, 94 (N.J. 1979).

Defendants assert this claim must be dismissed because it is not actually a valid cause of action. This is not true.  New Jersey courts have long permitted parties to assert quasi-estoppel offensively as both a claim and a counterclaim:

- *Kazin v. Kazin*, supra: quasi-estoppel sought and applied against defendant husband in divorce case, prohibiting him from asserting invalidity of plaintiff's prior divorce to escape division of marital assets and alimony after enjoying the privileges of marriage to plaintiff for several years.

- *Green v. State Health Benefits Com'n*, 373 N.J. Super. 408 (App.Div. 2004): Appellate court reversed prior decision of administrative agency, specifically to allow Plaintiff to present evidence of her claims for estoppel and quasi-estoppel.

- *Gilbert v. Durand Glass Mfg. Co., Inc.*, 258 N.J. Super. 320 (App.Div. 1992): Appellate court affirmed propriety of giving plaintiff's quasi-estoppel jury instructions where plaintiff was fired without warning although defendant employer had unwritten procedure of providing verbal and written warnings to employees prior to termination.

Moving Defendants' reliance upon *Burdette Tomlin Memorial Hosp. v. Estate of Malone*, 368 N.J. Super. 66  (App.Div. 2003) is misplaced.  This case absolutely does not stand or assert quasi-

estoppel is not an available cause of action.  This does not appear anywhere within this case.  Neither

plaintiff nor defendant apparently asserted quasi-estoppel in *Burdette*; rather, the appellate court *sua*

*sponte* applied it as the equitable outcome and reversed for entry of appropriate judgment.

Defendants' assertion regarding quasi-estoppel are contradicted by decades of New Jersey law

permitting its pleading by parties.  The authority cited for Defendants' position do not support their

statements and, in the instance of *Burdette Tomlin*, supra, contradict it.  For these reasons, Defendants'

motion as to quasi-estoppel is without merit.

B.    Defendants' use of unpublished appellate decisions violates New Jersey Supreme Court Rules which prohibits use of unpublished opinions as binding authority and limits citation as persuasive authority

The cases cited by moving Defendants in support of their contentions are not applicable

authority and should not have been cited to this Court as moving Defendants' use thereof violates New

Jersey Supreme Court Rule 1:36-3.  This rule states:

> No unpublished opinion shall constitute precedent or be binding upon any court. Except for appellate opinions not approved for publication that have been reported in an authorized administrative law reporter, and except to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law, no unpublished opinion shall be cited by any court. No unpublished opinion shall be cited to any court by counsel unless the court and all other parties are served with a copy of the opinion and of all contrary unpublished opinions known to counsel.

*Hobart Bros. Co. v. Nat'l Union Fire Ins. Co.*, No. A-3155-06T2, 2008 WL 2735620, (N.J. Super.

Ct. App. Div. Mar. 28, 2008) is an unpublished appellate decision.  It is not precedent, it is not binding;

it cannot even be cited by any court of New Jersey outside the limited exceptions noted in the rule itself.

Moving Defendants are prohibited from citing the opinion to a court unless it produces the opinion to

the Court and all parties <u>and</u> furnishes the Court and parties with all contrary unpublished opinions.

The moving Defendants have presented this case to the Court as binding authority when it is not

and may never be used as such.  They have not provided the opinion to Court or counsel opposite, they

have not provided contrary unpublished opinions.  Moving Defendants did not even inform this Court

the opinion was unpublished and had no binding precedential value whatsoever.

In so far as Defendants have violated the New Jersey rules for unpublished opinions, Plaintiffs'

respectfully submit the case must be ignored for purposes of Defendants' motion.

    C.    <u>Even if the Court allows the moving Defendants to submit authority in violation of</u>
<u>applicable New Jersey Rule, the authority cited does not stand for the proposition</u>
<u>forwarded by the Moving Defendants</u>

The improperly cited *Hobart Bros.* does not stand for the proposition that quasi-estoppel may

not be asserted as a cause of action but found its application in that case inapplicable since there had

been no change of position by the plaintiff.  In other words, the court's decision was based not upon the

unavailability of quasi-estoppel, but upon the facts of the case.

Indeed, the New Jersey court could not have even intended to make such an assertion as the case

it cites, *Heuer v. Heuer*, 152 N.J. 226  (N.J. 1998) specifically permitted it against the defendant in that

case.  *Id.* at 240.

    D.    <u>The Complaint alleges more than sufficient facts to support a claim of quasi-estoppel</u>

- Over the course of many years, the Defendants have accepted and used the databases but apply them inconsistently, depending upon which position is in their immediate economic interest.  For one repair, the Defendants will rely upon the databases to limit payment to Plaintiff, while in other instances, Defendants will completely ignore the databases to avoid payment, stating they are not going to abide by the databases. (Complaint, ¶¶ 68, 70-71, 102-104).

- The effect of the Defendants' inconsistent position with respect to the databases endangers the public and imperils the Plaintiffs economic ability to engage in their trade. (Complaint, ¶¶68, 70-71, 102-104, 121.)

- Repairing a vehicle requires the use of materials yet Defendants consistently refuse to pay for same as it is in their interest to pay less, stating materials are part of the cost of doing business even when they are not included in the repair procedure pages but are necessary to complete the repair. (Complaint, ¶¶ 71-73.)

The forgoing examples of the contents of the filed Complaint clearly establish the Moving Defendants' arguments are without merit.

Defendant GEICO's individual motion duplicates the allegations of the Moving Defendants and therefore will not be duplicated in response.

## IV.  TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

In New Jersey, an action for tortious interference with prospective business relations "protects the right "to pursue one's business, calling or occupation free from undue influence or molestation." . . . What is actionable is "[t]he luring away, by devious, improper and unrighteous means, of the customer of another." . . . Therein lie the elements of a prima facie case." *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 750 (N.J. 1989)(internal citations omitted).

Tortious interference developed under common law to protect parties to an existing or prospective contractual relationship from outside interference. *Id.* at 752.

### A.      Elements of Tortious Interference with Prospective Business Relations

One who intentionally and improperly interferes with another's prospective contractual relation is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation. *Nostrame v. Santiago*, 213 N.J. 109, 122 (N.J. 2013).  See also, *Printing Mart-Morristown* 116 N.J. at 752.

### B.      Moving Defendants have willfully and intentionally misrepresented the law on the required pleading for tortious interference with prospective business relations claims

Within this section of their Motion, the Moving Defendants have willfully and intentionally misrepresented authority applicable to this claim, the contents of authority cited and fairly well each and

every aspect of their argument omits critical contextual and factual distinctions.

As a general matter, Moving Defendants assert that Florida law is essentially identical to New Jersey and therefore the Court should handle this claim as it handled the Florida Action. Over and above the inferred suggestion this Court ignore applicable law out of expedience, New Jersey law is exceptionally distinct from Florida law, which is apparent with but the most superficial research.

Defendants assert the cause of action must fail because Plaintiff failed to identify specific customers with whom they allegedly interfered. Defendants plainly state this is fatal to Plaintiff's claim. This is a false statement.

"This Court agrees with those recent opinions from this District that conclude that Rule 8(a) does not require a party to identify a specific prospective customer or contract." *Teva Pharm. Indus. v. Apotex, Inc*., 2008 U.S. Dist. LEXIS 60418 (D.N.J. Aug. 7, 2008)(denying motion to dismiss tortious interference with prospective business relations claims under New Jersey law).

"In light of the pleadings, the Court finds that Plaintiff has satisfied the liberal notice pleading standards set forth in Fed. R. Civ. P. 8. Moreover, although earlier cases in this district required plaintiffs to plead with sufficient specificity the prospective economic advantage with which a defendant allegedly interfered, recent cases have not required such specificity." *Slim CD, Inc. v. Heartland Payment Sys*., 2007 U.S. Dist. LEXIS 62536 (D.N.J. Aug. 22, 2007)(denying motion to dismiss tortious interference with prospective business relations claims under New Jersey law).

"Toward that end, Defendant argues that Plaintiff must identify specific lost business opportunities in its pleadings. Again, Plaintiff need not provide the level of specificity sought." *Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs*., 2006 U.S. Dist. LEXIS 70834 (D.N.J. Sept. 29, 2006)(denying motion to dismiss tortious interference with prospective business relations claims under

New Jersey law).

"Plaintiff would have the Court read these cases to require a pleading party to name a specific prospective customer or contract with which another party interfered. The Court is not convinced, however, that such specificity in pleading is required under the notice pleading standard. . . . The Court is satisfied that defendant has sufficiently alleged that plaintiff has interfered with prospective customers or contracts for purposes of stating a claim for tortious interference with prospective economic advantage." *Syncsort Inc. v. Innovative Routines Int'l, Inc.*, 2005 U.S. Dist. LEXIS 15432, 33-34 (D.N.J. May 3, 2005)(internal citations to record omitted)(denying motion to dismiss tortious interference with prospective business relations claims under New Jersey law).

The most basic research revealed abundant authority which directly and unequivocally contradicts moving Defendants statements to this Court.  However, not content with merely ignoring the ample applicable authority, moving Defendants distort the facts, the context and the actual holdings of the cases they actively do cite.

*Advanced Oral Techs., L.L.C. v. Nutrex Research, Inc*., 2011 U.S. Dist. LEXIS 28625 (D.N.J. Mar. 21, 2011) does **not** hold a Plaintiff must identify specific lost custom in the complaint.  On the contrary, <u>carefully omitted from moving Defendants' quotations from this case was the specific acknowledgment that a plaintiff need not name the specific customers alleged to have been lost due to defendant's interference.</u> *Id.* at *10.

Nor does *Eli Lilly & Co. v. Roussel Corp*., 23 F. Supp. 2d 460  (D.N.J. 1998), also cited by moving Defendants, contain the requirement that particular lost business must be specifically identified.

Additionally, in citing *Valentine v. Bank of Am.*, 2010 U.S. Dist. LEXIS 8546 (D.N.J. Feb. 1, 2010), moving Defendants failed to inform the Court of the context in which the district court was

speaking.  The court found the plaintiff in that case had failed to plead <u>any</u> facts relating to any of the elements of the cause of action:

> First, Plaintiff has not alleged facts that she was in "pursuit" of business, which is a requirement for the first prong. . . . Second, Plaintiff has not alleged facts that the interference was inflicted intentionally and without justification or excuse, which is the definition of malice. . . . Third, Plaintiff has not shown that "if there had been no interference[,] there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits."  . . . Fourth, Plaintiff has not alleged facts that the injury to Plaintiff's reputation has caused damage.

*Id*. at 9-10 (internal citations omitted).

In stating the *Valentine* plaintiff should have pled with more specific information, the *Valentine* decision relied upon *Lucas Indus. v. Kendiesel*, 1995 U.S. Dist. LEXIS 7979 (D.N.J. June 9, 1995), which has been roundly condemned for its erroneous requirements: "Defendants cite *Lucas Indus. v. Kendiesel, Inc.*, 1995 U.S. Dist. LEXIS 7979, at *25-26 (D.N.J. June 9, 1995), for the proposition that the Third Circuit additionally requires a showing of "a sufficiently concrete prospective contractual relation" for claims of tortious interference with prospective economic advantage. (Quoting *Fineman*, 980 F.2d at 195). To the extent that Lucas relies on the Third Circuit's decision in *Fineman* for that proposition, Lucas is wrong - the portion of the *Fineman* decision quoted by the district court in Lucas was addressing the plaintiff's claim for tortious interference with a prospective contractual relation and not, as here, a claim for tortious interference with prospective economic advantage." *Commerce Ins. Servs. v. Szczurek*, 2006 U.S. Dist. LEXIS 515, 12-13 (D.N.J. Jan. 6, 2006).

*Novartis Pharms. Corp. v. Bausch & Lomb, Inc*., 2008 U.S. Dist. LEXIS 92133 (D.N.J. Nov. 12, 2008) also suffers from this same irreparable flaw.

Both of these cases rely upon the erroneous *Lucas Industries* case, which itself confused the elements of two different causes of action and erroneously incorporated a requirement of one into the

other.  While it is possibly conceivable moving Defendants' arguments with respect to legal authority was not intentional, merely the product of haphazard research, the same cannot be said for the false statements made regarding the contents of Plaintiff's complaint.

The Complaint is not "devoid of allegations detailing the identity of customers, whether those customers had an existing or contemplated relationship with Plaintiff, the type or extent of any interference with those relationships, or any actual resulting injury" as Defendants assert.

On the contrary, the Complaint specifies Defendants' illegal interference occurred with an identifiable population –insureds and claimants who identified the Plaintiff to the Defendants as their chosen body shop to perform repairs on their damaged vehicles. (Complaint, ¶¶ 84-87).

The Complaint specifies the nature of the interference by Defendants–after being told Plaintiff was the chosen repair facility, Defendants made false statements, misrepresentations and economically coerced those insureds and claimants to direct their business to another repair facility.  The Complaint includes examples of these false statements, misrepresentations and coercive efforts–these people were told the Plaintiff charged too much, that complaints had been received regarding the quality of Plaintiffs' work, the timeliness of Plaintiffs' work, that Plaintiff overcharged, that the customer would be responsible for any charges the defendant insurer chose not to pay to Plaintiff, that the customer would be responsible for rental car expenses because of the length of time Plaintiff took to make repairs. (Complaint, ¶¶ 83-87).

The Complaints sets out that Defendants' intentional misrepresentations, falsehoods and coercive measures have driven away business and caused financial harm to Plaintiff.  (Complaint, ¶¶ 83-87, 125, 129-30).

Plaintiffs are required to do more than merely allege that but for Defendant, it would have

obtained business from someone at some time.  At the same time, Plaintiff is not required to recite the

specific identity of those customers with whom the Defendants tortiously interfered.  It is not required

by either New Jersey law or federal pleading standards, particularly where, as here, "the facts are

peculiarly within the possession and control of the defendant."  *Dubyk v. RLG Pizza, Inc*., 2014 U.S.

Dist. LEXIS 34422 (S.D. Fla. Mar. 16, 2014).

Plaintiff has met this pleading requirement.  Defendants arguments and recitations of authority

are premised upon misrepresentations of fact and authority.  As such, Plaintiff respectfully submits

Defendants' motion to dismiss with respect to this cause of action must be denied.

Defendant GEICO's individual motion duplicates the allegations of the Moving Defendants and

therefore will not be duplicated in response.

## V.     MOVING DEFENDANTS MAKE NO ARGUMENT REGARDING FEDERAL SHERMAN ACT OR STATE ANTITRUST CLAIMS TO WHICH PLAINTIFFS MAY RESPOND

Moving Defendants' final section asserts the federal and state antitrust claims must be dismissed

for "the same reasons articulated by the Court in *A & E Auto Body*."    Moving Defendants make no specific

arguments at all.  Moving Defendants cite no authority other than cases which purport to hold that state

antitrust claims should be analyzed in harmony with federal analysis.

This "argument" fails to meet the requirements of the Federal Rules of Civil Procedure.  Rule

7(b)(1) sets out the minimum requirements for motions in federal court:

(b) MOTIONS AND OTHER PAPERS.
(1) In General. A request for a court order must be made by
motion. The motion must:
(A) be in writing unless made during a hearing or trial;
(B) state with particularity the grounds for seeking the
order; and
© state the relief sought.

This argument also fails to comply with Florida Middle District Uniform Local Rule 3.01

MOTIONS; BRIEFS AND HEARINGS, which states:

> (a) In a motion or other application for an order, the movant shall include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request, all of which the movant shall include in a single document not more than twenty-five (25) pages.

Here, moving Defendants do not state with particularity the grounds for seeking the order, set out the basis for their request or provide a memorandum of legal authority supporting those grounds. The moving Defendants have offered nothing upon which the Court may rule.

Plaintiff is at a loss to respond.  Dozens of motions have been filed in the Florida Action, with numerous arguments proffered.  Moving Defendants would have Plaintiffs simply guess which arguments to respond to.  Diligent search has not revealed any authority which permits this form of motion-incorporation-by-reference of pleading.

The deficiencies are even more glaring with respect to the New Jersey state antitrust statute. This statute was not at issue in the Florida Action, it was not briefed, nor argued, nor even considered by the Court, much less ruled upon.  Again, Plaintiff is left in the position of guessing, this time as to what arguments Defendants might have made when no arguments have ever been made before.

Plaintiff respectfully submits moving Defendants failure to comply with all applicable rules of motion content and practice requires denial of Defendants' motion with respect to these claims. Alternatively, Plaintiff submits Defendants must be required to file an appropriate motion which complies with the applicable rules and which would enable Plaintiff to address them appropriately with supporting authority.

## VI.   GEICO DEFENDANTS' ARGUMENTS THAT PLAINTIFF FAILED TO ADEQUATELY IDENTIFY SPECIFIC DEFENDANTS IN THE COMPLAINT IS WITHOUT MERIT

GEICO Defendants argue, as it has in the Florida Action, that the Complaint is fatally flawed for failing to specifically articulate by name the individual Defendants in every paragraph rather than the inclusive term "Defendants."  This argument is without merit.

### A.      Plaintiff's Complaint meets the pleading requirements or Rule 8

GEICO's argument conflates two separate analyses: whether the complaint alleges sufficient facts to meet the requirements of Federal Rule of Civil Procedure 8, and whether the Complaint sufficiently identifies each Defendants' wrongful acts such that each is put on notice of what they stand accused in this cause.

The inquiries both relate to Rule 8, but the analyses are distinct and rely upon different law. Plaintiffs' Response delineates these two arguments appropriately according to applicable law.

### i.      As all Defendants have engaged in the same conduct, use of the term "Defendants" where appropriate satisfies the pleading requirements.

Rule 8 of the Federal Rules of Civil Procedure requires a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing the pleader is entitled to relief and a demand for relief.   Absent from this Rule is any requirement that each Defendant be named in a list in every paragraph of the complaint when there are multiple defendants in a suit, all of whom have engaged in the very same actions.

The purpose of a complaint is to provide a defendant fair notice of what the claim is and the grounds upon which it rests**.**  *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1214 (11th Cir. 2010).

The allegations of the Complaint filed by the Plaintiff makes very clear that when "Defendants" are referred to, all Defendants engaged in the same unlawful behavior, e.g., all of the Defendants engaged in steering by publishing false and misleading statements about the Plaintiff and its business,

all of the Defendants refuse to compensate or fully compensate the Plaintiffs for work performed, and so forth.

Where one particular Defendant had a unique role, that Defendant is clearly identified, e.g., State Farm conducted a fabricated "survey" of labor rates, State Farm manipulated the rates it obtained to ones it found acceptable.

Defendants assertion and citation to authority that Plaintiffs have not alleged any specific actions against them is inaccurate.  The specific factual allegations are clearly set out.

Where, as here, all Defendants have engaged in the same unlawful actions, it is a senseless suggestion that each be identified in every relevant paragraph by name.  Numerous courts, including the Middle District of Florida, have recognized that where, as here, each defendant has engaged in identical activities, group pleading is permitted. *EEOC v. Gargiulo, Inc.*, 2006 U.S. Dist. LEXIS 23927 (M.D. Fla. Mar. 22, 2006) ("However, plaintiff cannot simply lump its individual assertions together in a group pleading, <u>unless</u> it is plaintiff's contention that the identical events apply to all five individuals.")(emphasis added)

In fact, the Florida Action, upon which GEICO Defendants so heavily rely, had an amended complaint which explicitly identified by name each Defendant as to each relevant fact. Neither GEICO nor the Court found it a satisfactory change.

Where, as here, each of numerous defendants engaged in identical activity, there are only a few practical options: either name each individual defendant in every paragraph, create multiple paragraphs each consisting of identical contents but for the name of the defendant–both of which have the effect of unnecessarily extending the complaint to double or triple its current length without adding anything of substance–or, as the Eastern District of Michigan noted, "a court must factor in the policy of

simplicity in pleading with the drafters of the Federal Rules codified in Rule 8." *Llewellyn-Jones v. Metro Property Group*, 22 F.Supp. 3d 760 (E.D. Mich. 2014). This approach has been recognized as reasonable under circumstances such as the present cause by numerous courts.  "It may at times be appropriate and convenient for a pleading to use the short-hand term "Defendants . . ." *Falat v. County of Hunterdon*, 2013 U.S. Dist. LEXIS 37398 (D.N.J. Mar. 19, 2013).

Other courts have recognized that group pleading is acceptable where plaintiff has alleged a conspiracy and the relevant defendants are identifiable.  *Corr. Med. Care, Inc. v. Gray*, 2008 U.S. Dist. LEXIS 6596 (E.D. Pa. Jan. 30, 2008).

The wary eye turned on group pleadings of the sort presently at issue is to ensure each defendant can discern the facts and allegations against them.  The Complaint does not, as GEICO asserts, "conceal which conduct Plaintiff may be alleging against GEICO."  On the contrary, the Complaint makes clear that GEICO, along with the other named Defendants, have engaged in all of the illegal, tortious conduct described.

GEICO's argument is without practical basis and contrary authority exists which negate its legal arguments.  As such, Plaintiff respectfully submits this argument is without legal or factual merit.

> B.      Plaintiffs assertions of fact within the Complaint more than satisfy the pleadings requirements of Rule 8 for antitrust violations

At the outset, Plaintiffs note the Defendants have misstated the applicable pleading standards. Plaintiffs are not required to set out specific facts, Defendants cite to *Bell Atlantic Corp. v. Twombly*, 550 U.S.544 (2007) for this proposition. However, absolutely nowhere in the *Twombly* decision do either those words or inchoate expectation appear.

On the contrary, though studiously avoided in the Defendants' Memorandum, *Twombly* specifically articulates the direct opposite of Defendants assertion: "[W]e hold that stating such a claim

requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.

Asking for plausible grounds to infer an agreement does not impose a probability requirement at the

pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence of illegal agreement." *Id.* at 556.

The Court further stated, quite clearly, that detailed factual allegations are <u>not</u> required under

Rule 8 to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 555. This was apparently such an important

point, the Supreme Court reiterated the ruling a second time: "As the Court held in *Twombly*, the

pleading standard Rule 8 announces <u>does not require "detailed factual allegations</u>," but it demands more

than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (emphasis added).

Furthermore, GEICO's statement that Plaintiff must allege facts showing it knew of the

conspiracy and its unlawful objective, knowingly joined and actions "interdependent with–not

independent of–the other Defendants in that GEICO's conspiratorial benefits depended on the success

of the overall conspiracy" is also false. There are no such requirements.

In fact, the authority cited contains no such language whatsoever. *Spanish Broadcasting System*

*of Fla.,Inc. v. Clear Channel Communications, Inc.,* was a monopoly claim, the elements GEICO

asserts are applicable to this matter are identified by the court as the elements of a claim of conspiracy

to monopolize. The Complaint does not allege any monopoly claim, therefore the elements of such a

claim are irrelevant.

There is, however, authority of value in *Spanish Broadcasting* which GEICO omitted:

> <u>The Supreme Court has indicated that a complaint should not be dismissed unless it is</u>
> <u>found to be wholly frivolous</u>. . . . This is not to say that liberal pleading requirements
> negate the need to draft an antitrust complaint in a careful and thoughtful fashion. An
> antitrust complaint must comprehend a so-called prima facie case, and enough data must

be pleaded so that each element of the alleged antitrust violation can be properly identified. Conclusory allegations that defendant violated the antitrust laws and plaintiff was injured thereby will not survive a motion to dismiss if not supported by facts constituting a legitimate claim for relief. However, <u>the alleged facts need not be spelled out with exactitude, nor must recovery appear imminent.</u>

*Spanish Broad. Sys. of Fla. v. Clear Channel Communs.*, 376 F.3d 1065, 1077-1078 (11th Cir. Fla. 2004)(emphasis added).

*United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988), is a criminal case involving charges of criminal conspiracy. It does not involve Sherman Act claims, Civil Rule 8 pleading requirements or any other issue in controversy in the present litigation.

*In re Vitamins [sic]*, 320 F.Supp. 2d 1 (D.C. Cir. 2004) suffers from the flaw of pre-dating *Twombly.* Thus, any requirements for pleading that may have appeared there are fully abrogated by *Twombly.*

This is not the first time GEICO has made this false statement regarding pleading an anti-trust case. In fact, GEICO has made the same argument repeatedly with the only change being to change the cited authority after it was pointed out to the Court that none of the cases held as GEICO asserted.

Defendants further argue the Plaintiff is required to plead facts amounting to what appears to be direct evidence of an express agreement among the conspirators. <u>Plaintiffs are not required to allege facts of an express agreement in their Complaint. Plaintiffs are not even required to provide evidence of an express agreement to survive summary judgment and proceed to jury trial.</u>

"It is elementary that an unlawful conspiracy may be and often is formed without simultaneous action or agreement on the part of the conspirators." *Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 227 (1939). See also *United States v. Paramount Pictures, Inc.*, 334 U.S. 131, 143 (1948)("It is not necessary to find an express agreement in order to find a conspiracy. It is enough that a concert of

action is contemplated and that the defendants conformed to the arrangement.") See also, *William Inglis & Sons Baking Co. v. Itt Cont'l Baking Co.*, 668 F.2d 1014, 1055-56 (9th Cir. 1982), *Volasco Products Co. v. Lloyd A. Fry Roofing Co.,* 308 F.2d 383, 389 (6th Cir. 1962),  *Ball v. Paramount Pictures, Inc.*, 169 F.2d 317, 320 (3RD Cir. 1948)  *Ross v. American Express Co.*, 2014 U.S. Dist. LEXIS 50550, *70-71 (S.D.N.Y. 2014).

As these cases demonstrate, it is generally accepted and understood across the national judiciary that only rarely will there be direct evidence of an express agreement.  Logic dictates this as conspirators are generally anxious to conceal their crimes and any direct evidence of unlawful agreements are solely within the possession or control of the guilty parties or they were not foolish enough to write down their illegal agreement.

To recapitulate:

• The Supreme Court has ruled agreement to conspire for Sherman Act liability may be either tacit or express. *Theatre Enterprises, Inc. v. Paramount Film Distributing Corp*., 346 U.S. 537, 540 (U.S. 1954).

• The Supreme Court has ruled simultaneous agreement or action is not necessary for purposes of Sherman Act conspiracy liability. *Interstate Circuit, Inc.*, 306 U.S. at 227.

• The Supreme Court has ruled circumstantial evidence is admissible to infer an agreement. *Id.*

• The Supreme Court has ruled it is not necessary to establish an express conspiracy or agreement.  It is sufficient that defendants acted in conformity with a contemplated agreement. *Paramount Pictures*, 331 U.S. at 143.

On these rulings alone, GEICO's assertions are rendered insupportable.

## VIII.   GEICO'S ARGUMENTS THAT PLAINTIFF HAS FAILED TO ALLEGED THE REQUIRED SUBSTANTIVE ELEMENTS OF ITS ANTITRUST CLAIM ARE FALSE

GEICO's argument on this issue is easily disposed of.   GEICO has made this argument repeatedly in prior motions filed in companion cases.  In each instance, Plaintiffs' response thereto has

demonstrated GEICO's authority does not stand for the propositions asserted and further established GEICO's assertions regarding the contents of the complaints at issue are fabricated.  Why GEICO continues to press this argument in the face of having previously been shown to forward it in bad faith is without logical basis.

Perhaps GEICO assumes that by placing it now in the context of a rule of reason "analysis," it will somehow alter the fact that its attribution of authority is misrepresentational and its assertions of the Complaints are wholly fabricated.

Additionally, the Plaintiff has not alleged the rule of reason analysis is applicable to this cause. To the contrary, the per se standard is arguably the more appropriate standard.  Horizontal agreements to fix prices apply the per se standard, not rule of reason.  *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1320 N. 25 (S.D. Fla. 2010).  Likewise, group boycotts are per se illegal.  *Keller v. Greater Augusta Ass'n of Realtors*, 760 F. Supp. 2d 1373, 1377 (S.D. Ga. 2011).

Both horizontal price fixing and group boycotting are alleged in the Complaint.  (Complaint, ¶¶ 119, 125-30) .   As such, no rule of reason analysis is arguably applicable.  However, in the vein of providing a full response, the Plaintiff here does so.

GEICO asserts eight elements must be pled in a complaint for Sherman Act violations.  Those elements, according to GEICO, are:

1. A product or service market that is relevant for antitrust purposes;
2. A geographical market that is relevant for antitrust purposes;
3. Market power in the relevant product/service and geographic markets;
4. Barriers to entry;
5. Wrongful conduct resulting in anticompetitive effects;
6. That the anticompetitive effects outweigh the pro-competitive benefits;
7. Antitrust injury or standing
8. Damages.

Neither of the cases GEICO cites list these eight "requirements." *Image Technical Services, Inc.*

*v. Eastman Kodak, Inc.,* 125 F. 3d 1195 (9th Cir. 1997) does not include the eight "requirements" listed by the Defendant GEICO.   Even if this were a binding, rather than persuasive citation to authority, it would still not avail. The opinion does discuss the need to show barrier to entry, market definition and that a defendant holds a dominant share of the market.   *Id.* at 1202. The opinion does describe the need for anti-competitive effects.   *Id.* at 1224. Unfortunately for Defendant GEICO, these "requirements" were set out in terms of a <u>monopoly</u> claim under 15 U.S.C. §2.   The Plaintiffs have not asserted this claim and therefore have no obligation to plead the elements of a claim they have not made.

### A.      Plaintiff has asserted sufficient facts regarding the product or service market

GEICO complains the Plaintiffs have failed to adequately define the relevant market.    But see Complaint, ¶ 28. The Plaintiff is in the business of recovery and/or repair of motor vehicles involved in collisions.

There is no question but that the product market is identified in the Complaint.  After all, the product market is merely a matter of identifying the product at issue in the litigation.   The product at issue is automobile collision repair.   This is not challenged at all by GEICO.   In fact, GEICO is completely silent as to the purported deficiencies.   It merely makes the conclusory statement that Plaintiff failed to alleged facts tending to prove the relevant product market.

Defendant GEICO appears to believe there is something scientific or statistical that needs to be pled. There isn't.  Identifying the product market is simply a matter of identifying the product at issue. *Spanish Broad. Sys. v. Clear Channel Communs., Inc.*, 242 F. Supp. 2d 1350, 1357 (S.D. Fla. 2003).

Though authority cited by Defendant GEICO does not require these eight elements be pled in the complaint for the claims asserted, the Plaintiff points out the relevant geographic market is the State of New Jersey.   See, e.g., Complaint, ¶¶ 28. The Plaintiff is a New Jersey business, repairs vehicles

-33-

from throughout the State of New Jersey.

GEICO complains this is insufficient. Why this is insufficient is not made particularly clear. GEICO does complain Plaintiff failed to exclude some other possible geographic market but makes no argument as to how or why some other geographic market is more accurate, which is its burden as the movant challenging the contents of the Complaint.  Furthermore, GEICO submits no authority Plaintiff bears the burden of excluding other possible geographic determinations of market area.  Certainly the authority cited by GEICO, *Apian*, does not place upon the Plaintiff the burden of anticipating defense objections and incorporating such into the Complaint.

> **B.      Plaintiffs have asserted sufficient facts regarding market power in the relevant market**

Interestingly, GEICO asserts that it is Plaintiff's burden to assert facts establishing the market power of the defendants in the relevant product/service and geographic markets but then argues that market share allegations are irrelevant under *Twombly* and *Iqbal.*

In fact, Plaintiff cannot understand at all what argument GEICO is attempting to make as it makes no sense.  Plaintiff is truly baffled by citation to the Federal Rules of Evidence, the rules regarding admissibility of evidence, which are plainly not applicable to factual allegations of the Complaint. Citation to *Spanish Broadcasting* has no apparent point as the citation references nothing set forth in this section of GEICO's argument.

GEICO does appear to be attempting to argue there is both a distinction and interdependence between market power and market share.  If so, it provides no argument and cites no authority, nor provides any explanation as to how the Complaint is deficient.  As this is solely GEICO's burden as the movant, it is self-evident GEICO's failure to do so renders this purported argument wholly without merit.

### C.     Barriers to entry are not relevant to the allegations of the Complaint

Barriers to entry are only applicable in  monopoly cases, including predatory pricing claims. See cases cited in Defendant GEICO's Memorandum of Law.  See also *Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818 (6th Cir. 1982)(monopoly) and *Western Parcel Express v. UPS of Am.*, 65 F. Supp. 2d 1052 (N.D. Cal. 1998).

Neither of these are relevant to the current cause as the Plaintiff does not compete in the same industry as the Plaintiffs, has not asserted a monopoly claim nor has it asserted a predatory pricing claim.   The Defendants cite no authority for their proposition which fits the facts of this case.

GEICO's argument that Plaintiff's failure to allege barriers to entry because Plaintiff "admits" there are more than thirty insurers selling policies in the State of New Jersey is both irrelevant and intentionally misleading.  In addition to not asserting a monopoly claim, the Plaintiff is not a competitor of the Defendants.  It does not sell insurance.  Whether or not there are barriers, high or low, to other insurance companies entering or leaving the insurance market area of New Jersey has no bearing whatsoever to the Plaintiff or its claims as the Plaintiff is in the business of automobile collision repair.

### D.     Plaintiffs have pled sufficient facts regarding anti-competitive effect

The anti-competitive effect of Defendants' actions, including GEICO's, is the suppression of labor rates below competitive levels, suppression of compensation for paint and materials below competitive levels, steering, among others.  The anti-competitive effect has been to destroy competition in the auto collision repair industry.

The entirety of Defendant GEICO's arguments that low prices are typically indicative of competition and therefore constitute a pro-competitive benefit of the Defendants' price fixing is so obviously and fundamentally flawed, one can only assume it was forwarded with the deliberate intent

to deceive rather than by error.

Lower prices in a free and open market may very well be the product of competition and reflective of competitors offering better, faster, innovative products and services to stay ahead of those competitors.

This is not that situation.  Here, prices are not "low" because body shops have healthy competition.  Prices are artificially suppressed through fabrication, manipulation, coercion, economic duress, and just plain law breaking by the Defendants, who occupy an entirely different industry and compete, at least ostensibly, with each other, not the Plaintiff or any other collision repair facility.

Defendant GEICO does not cite a single piece of authority which holds that price fixing of an entire industry by a wholly different industry constitutes pro-competitive conduct.  It is not possible, of which GEICO is well aware.  On the contrary, this is exactly the behavior that prompted an antitrust complaint to be filed by the Department of Justice in *United States v. Association of Casualty and Surety Companies, et al.,* which led to entry of the 1963 Consent Decree.

### E.      Plaintiffs are not required to assert facts that the anticompetitive effects outweigh the pro-competitive benefits.

Proving that purported pro-competitive benefits exist is an affirmative obligation of the Defendants, including GEICO, not a pleading requirement of the Plaintiffs.  The Tenth Circuit has stated the matter most clearly and cogently:

> ...[T]he the plaintiff bears the initial burden of showing that an agreement had a substantially adverse effect on competition. . . . If the plaintiff meets this burden, the burden shifts to the defendant to come forward with evidence of the procompetitive virtues of the alleged wrongful conduct.

*Law v. NCAA*, 134 F.3d 1010, 1019 (10th Cir. 1998)(internal citations omitted).

See also, *Nilavar v. Mercy Health System-Western Ohio*, 244 Fed. Appx. 690, 695 (6th Cir.

2007), *Gregory v. Fort Bridger Rendezvous Ass'n*, 448 F.3d 1195, 1205 (10th Cir. 2006) *Toscano v.*

*PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1121-22 (E.D. Ca. 2002).

Of course, this is premised upon application of the rule of reason analysis framework, which has

not been decided.  Under a per se analysis, no justification asserted by Defendants would suffice.

Nonetheless, for purposes of this Motion Response, having cited no authority from any

jurisdiction that Plaintiffs are required to assume Defendants' burden, this argument is without merit.

Additionally, GEICO's argument that agreement by buyers to purchase goods or services from

one supplier rather than another is wholly without merit.  GEICO does not have a choice whether or not

it chooses to deal with the Plaintiff.   The choice of body shop belongs solely to the consumer.  New

Jersey Administrative Code  11:3-10.3(e).  Asserting this line of argument is disingenuous, forwarded

in bad faith and done solely for the purposes of harassment and delay.

### F.        Plaintiffs have asserted facts establishing an antitrust injury

The Sherman Antitrust Act, § 1, prohibits any contract, combination or conspiracy in restraint

of trade or commerce. *JES Props. v. USA Equestrian, Inc.*, 253 F. Supp. 2d 1273, 1279 (M.D. Fla.

2003).  An antitrust injury is an injury of the type the antitrust laws were intended to prevent and flows

from that which makes defendant's acts unlawful. *ErinMedia, LLC v. Nielsen Media Research, Inc.*,

401 F. Supp. 2d 1262, 1267 (M.D. Fla. 2005).

Defendants' anti-competitive acts, including GEICO's, include the suppression of labor rates

below competitive levels, suppression of compensation for paint and materials below competitive

levels, steering, among others.  The anti-competitive effect has been to destroy competition in the auto

collision repair industry in the State of New Jersey, retard innovation, prohibit broad capital

improvements across the industry, limit choice of consumers, place consumers in a position of physical

and financial peril due to incomplete and unsafe repairs performed at the direction or compulsion of the Defendants. (See Complaint, e.g., ¶¶ 32-35, 39-46, 57-63, 64-68, 70-73,78-81.)

The Plaintiffs have sustained damages as a result of the Defendants' unlawful actions. Defendants, including GEICO have engaged in a combination or conspiracy in placing and enforcing payment ceilings through collective market share control and power and the financial reality that Plaintiff is dependent upon work for which Defendants are responsible for payment.  These payment ceilings are enforced against the present Plaintiff and all other body shops.  The result of these payment ceilings is the destruction of competition in the auto collision repair industry within the state.

Plaintiffs have no ability to raise or lower prices to establish a competitive environment or operate in a free market subject to ordinary economic forces and choices as Defendants exercise their power through force of economic loss and/or reprisal should Plaintiff decide to "buck the system."

These are the actions taken by the Defendants and the injuries suffered by the Plaintiffs as a result.  These are exactly the type of actions the Sherman Antitrust Act was intended to prevent and thus Plaintiffs' injuries are antitrust injuries as that term is here used.

### G.    Plaintiffs have asserted the suffered damages as a result of the Defendants' unlawful actions.

As Defendant GEICO makes no argument regarding this "requirement," presumably the issue is conceded.

## IX.    GEICO FAILS TO MAKE AN ARGUMENT REGARDING THE PLAINTIFF'S CLAIM UNDER THE NEW JERSEY ANTITRUST STATUTE

GEICO makes no argument nor provides  authority regarding the New Jersey antitrust statute, merely states it is identical to the federal law, identical analysis applies and as the federal claim must be dismissed, so must the state anti-trust claim.

This is insufficient.  It requires the Court to become the movant by scouring the statutory authority and the case law which interprets and applies it.  The authority requiring both specific argument and authority for this issue is raised above, to which Plaintiff directs the Court so as to avoid duplication.

Here, moving Defendants do not state with particularity the grounds for seeking the order, set out the basis for their request or provide a memorandum of legal authority supporting those grounds. The moving Defendants have offered nothing upon which the Court may rule.

Neither the Court nor the Plaintiff is, nor should be, placed in the position of divining GEICO's arguments and legal authority.  In the absence of any argument and the absence of any authority supporting the same, GEICO's objection to the New Jersey state antitrust law claim is facially deficient.

## CONCLUSION

The Defendants have wholly failed to show any pleading deficiencies in the Complaint when the proper standards are applied.  The allegations of the Complaint are more than adequate to show a sufficient factual bases for the causes of action asserted.  The Defendants arguments are without merit.  As such, the Motion to Dismiss should be denied in its entirety

Respectfully submitted, this the 10th day of March, 2015.

**ULTIMATE COLLISION REPAIR, INC.**


**BY:**     /s/ Allison P. Fry
             John Arthur Eaves, Jr.
             Allison P. Fry
             William R. Sevier

             Attorneys for the Plaintiff

John Arthur Eaves,
Attorneys at Law
101 N. State Street
Jackson, MS 39201
Telephone:     601.355.7961
Facsimile:      601.355.0530
allison@eaveslaw.com

## <u>CERTIFICATE OF SERVICE</u>


I certify that a true and correct copy of the foregoing Plaintiff's Response to Defendants' Motion

to Dismiss has been served electronically via the ECF system all counsel of record registered

to receive note.

<u>/s/ Allison P. Fry</u>

-40-